NICHOLLS, J.
The statement of facts in the case and the issues involved contained *145 in the brief on behalf of the state (appellant) are as follows:
The state of Louisiana proceeded against the O. C. Hartwell Company, Limited, under section 14 of Act No. 171, p. 415, of 1898, as amended, by Act No. 103, p. 160, of 1900, to ■collect a license from it for the years 1901-1905, inclusive, alleging that it is a contractor or mechanic who employs assistance; that its annual gross receipts from the said business exceed $20,000; that it had obtained no license from the state of Louisiana, to ■conduct this business for any year; and that there was due to the state of Louisiana from the said corporation the sum of $120 for each year, with interest at the rate of 2 per cent, a month on each amount, from the 1st of March each year, respectively, and as attorneys’ fees, 10 per cent, on the whole principal and interest.
Defendant, answering, denies that it is a ■contractor; claims exemption from license tax under articles No. 229 of the Constitution of 1898, as one engaged in a mechanical pursuit; and urges that, if it is a contractor, the state, under the “doctrine of contemporaneous construction,” is now estopped from claiming the said licenses.
By agreement of counsel, it was admitted that the C. C. Hartwell Company, Limited, was incorporated in the year 1904; that, if •subject at all, it owed license to the state only for the years 1904 and 1905; and that its purposes of incorporation, as set forth in its charter, are as follows:
“Manufacturing of lighting fixtures, contracting and dealing in sanitary plumbing, electric ■installments and supplies, steam heating,” etc.
It was further admitted, subject to objection by the state, that the said corporation is the successor of “Hartwell & Co.,” a partnership which had carried on business in this city since the year 1879; that a license as a retail dealer had been paid by this partnership during all of these years; that no demand had been made upon it for a license as a contractor; that the tax collector had issued the said license without op position; and that others similarly engaged had paid a retail- dealer’s license.
The court, without passing on the objection, or going into the merits of the case, rendered a judgment in favor of the defendant on the ground that this was a proceeding for an additional license, and that the rule laid down in the case of State v. Chess, Checkers & Whist Club (No. 15,934 of the Supreme Court docket) 40 South. 526,[1] was fatal to the plaintiff’s demand. The questions before the court, relative to their importance, are:
(1) Is the state here proceeding for an additional license?
(2) If no, does article No. 229 of the Constitution of 189® exempt the defendant from the license taxes?
(3) If no, is the defendant protected in the present action, by the- doctrine of contemporaneous construction?
(4) Quantum?
Counsel for the state say:
The claim made by the defendant that it is engaged in a mechanical pursuit, and is therefore exempt from a license, under article 229 of the Constitution of 1898, is clearly unfounded. The court has decided upon many occasions that the only persons protected by this article of the Constitution are mechanics or laborers who work with their own hands. It has gone further and decided that an act levying a license upon persons engaged in mechanical pursuits, unless working continuously with their hands, is not unconstitutional. In Tax Collector v. Conner, 42 La. Ann. 789, 7 South. 690, this court said:
“Taking the phrase engaged in a mechanical pursuit, according to these definitions, and it is clear that the framers of the constitutional articles intended to relieve from license those persons who are engaged from day to day in the performance of manual labor in mechanical *147 or agricultural pursuits, and that the master builder and contractors who employ others to do the worlc which they merely superintend should, like other professional men, pay the license tax.” (Italics ours.)
See, also, State v. McNally, 45 La. Ann. 45, 12 South. 117; City v. O’Neil, 43 La. Ann. 1182, 10 South. 245.
It must likewise be remembered here that the state is not proceeding against 0. O. Hartwell, an individual, but against the 0. O. Hartwell Company, Limited, a corporation, and, a fortiori, it is a fact that the Constitution of this state never intended to exempt a corporation in such a pursuit from the license tax.
Defendants state their position as follows:
The principle contention of the state is that defendant is a contractor and a mechanic employing assistance, and as such liable for a separate and additional license on its business, under the provisions of section 14, of Act 171, p. 415, of 1898, which imposes a license only “upon master builders, stevedores, bill posters or tacking contractors and mechanics who employ assistance.” It is plain from the evidence that defendant is neither a master builder, a stevedore, a bill poster, nor a tacking contractor, and it is attempted to hold it as a mechanic who employs assistance as a contractor.
The term “contractor,” according to the idea of the license act, .is of uncertain signification. Every person engaged in business may be called a contractor. The retailer, the wholesaler, the insurer, the pawnbroker, the manufacturer, the *tnechanic — all these are contractors. This will hardly be denied. The tax collector claims, however, that, if the license imposed on a retailer or other business specially designated in the license act is less than that imposed upon contractors in general, we must disregard the special designation and classification, and by applying a general designation obtain higher license. This proposition is neither just nor reasonable. We think the term “contractor” was put in by the Legislature to cover cases-not specially covered under the previous sections of the law, or in cases where no-exemption from license taxation could be-allowed.
However, it cannot be held as a mechanic-who employs assistance in any event. Assuming therefore that it is engaged in a mechanical pursuit, that is to say, that it employs mechanics or journeymen plumbers to install the fixtures sold by it, then it is exempt under-article 229 of the Constitution, which specially exempts from its provisions “those engaged in mechanical, agricultural, horticultural and mining pursuits.”
Right here it is well to note that the terms-of article 229 is not as contended for by the-state. The exemption accorded is not in favbr of mechanics, agriculturists, or farmers- and miners, but “those engaged in a mechanical, agricultural and mechanical pursuit,”' which necessarily included corporations.
There is therefore no difference between a person who is engaged in a mechanical pursuit and a corporation so engaged, -as the article applies to both persons and corporations-
Article 229 of the Constitution of 1898 declares that:
“All persons, associations of persons and corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax (a license tax) except clerks, laborers,, clergymen and school teachers, those engaged in mechanical, agricultural and mining pursuits.”
The license tax demanded is claimed under-the fourteenth section of Act No. 171, p. 415, of 1898, as amended by Act No. 103, p. 160,. of 1900.
Section 14 of Act No. 171, p. 415, of 1898, divides into 13 classes for the purposes of a license tax, “for the business and hereinafter named,” to wit:
“For every individual or company carrying on the profession or business agency, for steamboats, draying, trucking, keeping cabs, carriages, hacks or horses for hire, undertakers, owners-, or lessees of toll bridges and ferries, master builders, stevedores, bill posting or tacking,. *149 contractors and mechanics who employ assistants.”
The provisions of the amendment of 1900 to the act have no bearing on the issues involved in this case and need not be recited. The tax is claimed not from Hartwell, individually, but from the “corporation” known as the “Hartwell Company, Limited.”
That corporation is shown to be engaged in a “mechanical pursuit,” and in the conduct of its business to take contracts for mechanical work. The mechanical work done by the corporation is necessarily done by and through its agents and employes. It cannot of itself and as an “entity” act, independently of such agents and employés, as a “mechanic,” as an individual does who himself does work.
The mechanical work done by a corporation may, however, be done either for its own account or for the account of others; that is to say, the work done may result in the production of a thing belonging either to the corporation itself or to the person or corporation for whom it is done. If for another person, that work can be done through “contracts” made by the corporation with that person. • It may therefore well be a “contractor” for mechanical work. If done for itself the thing produced by the work is either held in ownership for its own use or held to be sold or transferred to some other person; that is to say, as a dealer in the thing produced.
In the case of Roy v. Schuff (La.) 24 South. 788, the municipal authorities of the town of Mansura sought to compel the defendant to pay a license tax as a peddler; that is, substantially, as a dealer or trader in the products of a farm which he was engaged in selling. He resisted the tax on the ground that he was a “farmer,” and as such engaged in “agricultural pursuits”; that he was therefore exempted from paying a license. Whether he himself as a farmer did any physical' work on the farm does not appear.
The court held that the exemption covered both the farmer and the sale by the farmer of that which the industry produced. In City of New Orleans v. Bayley, 35 La. Ann. 545, the defendant was a plasterer who worked with his own hands, and who, when executing a larger “contract” than he could conveniently do himself, employed others to “assist” him. The court held that he was engaged in a mechanical pursuit, “that the employment of assistants in his occupation did not alter the nature of his occupation,” and ’that the Constitution exempted “those engaged in mechanical pursuits” from the payment of licenses upon their trades. In that particular case the state tax under which the license was claimed imposed a “license upon mechanics who employed assistants,” and the town ordinance following the law imposed a license tax upon every individual carrying on the business of a “mechanic who employed assistants.”
The court said that the superior law having already prohibited that kind of .business from being taxed, the Legislature, and still less the town, had no authority to impose the license.
The case referred to differs from the present one, in that the question was raised in the other case as to Schuff’s liability to a tax for selling or dealing with the products of the farm, while in this case there is no issue as to whether Hartwell & Co. were liable as dealers, as they had paid a license as such.
The question here is not whether the corporation was liable as a .“dealer,” but as a “contractor,’! or “mechanic who employed assistants.”
In Theobalds v. Connor, 42 La. Ann. 787, 7 South. 689, the defendant was an “individual,” not a “corporation.” He claimed exemption under article 206 of the Constitution of 1879, which exempted “persons engaged in ■mechanical pursuits.”
Defendant contended that so much of section 12 of Act No. 101, p. 182, of 1886, as au *151 thorized the collection of an annual license from “every individual carrying on the business of master builder or mechanic who employs assistance” was uncircumstantial. It appeared from the evidence that the defendant was a brick mason, but had not followed the manual duties of that occupation for many years; that he made contracts for the erection and construction of brick edifices, the building of which he supervised, while the mechanical labor of laying the bricks was performed by employes of his own or those of the person for whom the contract was taken; that he was also a manufacturer of brick and made contracts to place them in the walls of buildings at a fixed price per thousand; that in such case he employed bricklayers to do the mechanical part of the work, and he superintended the construction of the building; that he had been a contractor for the brickwork of many buildings for 15 years, but he had not performed any regular manual labor in laying bricks in the erection of the buildings. He had contracted for the brickwork or supervised or superintended it in all the cases referred to. He had occasionally laid bricks in order to exhibit. his own skill or to direct others. The court held that he was a contractor or master mechanic or builder who employed other persons to do the work which he superintended. Unlike Bayley, he did not work at his trade with his own hands. Those whom he employed did the work with their hands, and he superintended them merely.
Comparing the statute and the articles of the Constitution, the court said the language justified the distinction which the statute had made. It justified a license tax being imposed on such persons as pursue any of the professions, businesses, or callings which are enumerated therein, and the exemption from such tax of those who are engaged as clerks, or laborers, and those engaged in mechanical pursuits, etc. It might be that a master builder or contractor who employed workmen or assistants might be liable to the license tax, and at the same time a clerk, laborer, or one engaged in a mechanical or agricultural pursuit who employed other laborers or mechanics to assist him, was exempt therefrom.
The question turned upon the character of the avocation, or employment, and not upon the fact of assistants being employed; that a “mechanic,” according to Worcester, was one employed in mechanical or manual labor, and “mechanical” was defined to be “employment in manual labor”; that, taking the phrase “engaged in manual pursuits” according to those definitions, it was clear that the framers of the Constitution intended to relieve from license those persons who were engaged from day to day in the performance of manual labor, in mechanical or agricultural pursuits; and that the master builder and contractors who employed men to do the work which they merely superintended should, like other professional men, pay the license tax.
In the case of City of New Orleans v. Langman & Son, 43 La. Ann. 1180, 10 South. 244, and City v. O’Neil, 43 La. Ann. 1182, 10 South. 245, the defendants were sued as individuals, not as corporations. They were sued for a license as being master builders. The defendants resisted on the ground that they were exempt “as engaged in a mechanical pursuit.” In the Case of Langman it was shown that he individually performed manual labor from first to last in the construction of the buildings contracted for. The court held him to be exempt from the license tax, but in the O’Neil Case it adjudged the defendants liable, as the evidence did not disclose that they had worked at their trade with their own hands.
In State v. Dielenschneider, 44 La. Ann. 1116, 11 South. 823, the defendant was sued as an individual for a license tax as being a “barber.” He resisted on the ground that he was engaged in a mechanical pursuit, within *153 the meaning of the Constitution, The court held that the labor of a barber was mechanical and declared him exempt. It is evident that he himself worked as a barber.
The only mechanical work performed by the defendant in this case for its own account was the manufacturing of gas fixtures which it held for sale; the other mechanical work being work for other persons by means of contracts between those persons and the corporation. The license claimed of the defendant is by reason of their status as “contractors” who employ assistants. Quoad the work executed by it for other persons, we think it is liable for a license, for the years 1904 and 1905, though such work was mechanical in character. We think the license claimed was not an increased license on an occupation already licensed, but a license upon a separate and distinct occupation from that of a dealer.
We cannot recognize as well founded the claim of the defendant advanced upon the authority of the decision of this court in State v. Comptoir National, 51 La. Ann. 1272, 26 South. 91, that the license demanded of it could not be exacted, for the reason that, under the construction of the statute by the officers of the taxing department which had been adopted' contemporaneously with its enactment, no such license could be called for, and none had been made until, by a changed construction of the law, demand had been made upon it for such a license. The officers of the tax department had never been called upon by defendant to declare whether such a license was due by it and informed that it was not. The contemporaneous construction of the law, so far as defendant was concerned, went no further than that no demand for a license had been made upon it or others similarly situated. The utmost effect of .such a condition of things would be to relieve defendant from the payment of interest and penalties until from and after judicial demand.
For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the state of Louisiana do have and recover judgment against the defendant for a license of $60 for each of the years 1904 and 1905, as a contractor who employed assistants, together with 2 per cent, per month interest on each of said amounts from judicial demand until paid, and 10 per cent, on the whole principal and interest as attorney’s fees.

 ie La. 46.